[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 1, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15656
Non-Argument Calendar

_____

D. C. Docket Nos. 05-20934-CV-DLG & 02-20794-CR-DLG

TERRY TUCKER,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 1, 2007)**

Before TJOFLAT, BLACK and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty to distributing cocaine, Terry Tucker was sentenced to federal prison on April 23, 2003. He did not appeal the sentence. Nearly two years later, on April 5, 2005, Tucker filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, contending that his trial counsel had been ineffective by failing to file a timely appeal.[1] The district court dismissed the petition as untimely. Tucker appeals from that judgment, challenging the court's decision regarding timeliness and raising several peripheral issues as well.

Although the district court issued a certificate of appealability on four questions, only one demands resolution: Did the trial court clearly err when it adopted the magistrate judge's finding that Tucker's petition was untimely? The answer is no; therefore, we affirm.

Under 28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a prisoner moving to vacate his sentence must do so within one year from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

---

[1]In his petition, Tucker alleged that his lawyer was ineffective in other ways, as well. We need not discuss those allegations in the context of this appeal, which focuses solely on the timeliness of Tucker's habeas petition.

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Tucker contends that his petition was timely under § 2255(4) because he filed it within one year of discovering that his lawyer had not filed a direct appeal of his sentence.

In determining whether a motion is timely under § 2255(4), a district court must first consider whether the petitioner exercised due diligence in discovering the facts underlying his claim. *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002). Due diligence does not require a litigant to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts to discover the facts underlying each claim. *Id.* at 712. If the court finds that a petitioner was not diligent in his efforts, it must proceed to consider when the petitioner could have discovered the facts essential to his claim had he been acting diligently. *Id.* at 711, n.1. So long as the petition is filed within one year of the date on which the facts could have been discovered with reasonable diligence, the petition will be timely.

This court reviews for clear error the question whether a petitioner exercised due diligence in discovering the evidence upon which he bases his § 2255 petition. *Id.* at 711. This standard requires us to affirm a district court's findings of fact unless the record lacks substantial evidence to support the factual determinations. *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1283 (11th Cir. 2002). In cases such as this, where a magistrate judge has made a credibility determination based on an assessment of witnesses' in-court testimony, we "defer to the magistrate judge's determinations unless his understanding of the facts appears to be unbelievable." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

Tucker argues that the magistrate's credibility determinations, adopted by the trial court, were inconsistent and therefore incredible. In support of this argument, Tucker points to the fact that the magistrate judge twice revised and supplemented his report and recommendation (once at the request of the district judge and once *sua sponte*).[2] Several of the facts set forth in earlier versions of the

---

[2] On appeal, Tucker argues that the magistrate judge violated the Magistrates Act, 28 U.S.C. § 636(b)(1) and Rule 8(b) of the Rules Governing Section 2255 Proceedings by issuing his third revised report and recommendation without first being asked by the district judge to amend or supplement his report. Nothing in § 636(b)(1) prohibits magistrates from correcting perceived errors in their reports and recommendations when mistakes come to light, and good sense suggests that such a practice is both prudent and efficient. The district court reviewed each version of the report and recommendation, as well as Tucker's objections to each of the three versions, before adopting the magistrate's findings and denying Tucker's habeas petition. The entire process of determining the disposition of Tucker's petition "t[ook] place under the district court's total control and jurisdiction, and the judge exercise[d] the ultimate authority to issue an appropriate order." *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006) (citing *Thomas v.*

magistrate's report and recommendation contradict facts found in the final report and recommendation, leading Tucker to conclude that *all* of the court's factual findings were unreliable. Of most concern to Tucker is the fact that in the original report and recommendation, filed January 27, 2006, the magistrate found that Tucker had asked his lawyer to file an appeal of his sentence and that the lawyer did not do so, a fact that would constitute ineffective assistance *per se*. *See Peguero v. United States*, 119 S. Ct. 961, 965 (1999). In the second supplemental report and recommendation filed May 3, 2006, the magistrate rescinded the finding, concluding instead that "counsel's testimony that Tucker did not ask him to file a notice of appeal [was] more credible than Tucker's" testimony to the contrary.

Although it is understandable that Tucker objects to the magistrate judge's unexplained change of mind, his focus is misplaced. The disposition of Tucker's habeas petition turns not on whether he asked his lawyer to file an appeal, but on whether he filed his habeas petition within "one year of the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(4). The magistrate judge was clear in his finding that Tucker was not diligent in that regard, and the district judge did

---

*Arn*, 106 S. Ct. 466, 474 (1985)). We find no merit to Tucker's challenge to the magistrate's action.

5

not clearly err by adopting the magistrate's findings of fact and the legal conclusions that flowed from them.

During the evidentiary hearing held before the magistrate judge, Tucker testified unequivocally that after he was sentenced he asked his lawyer to file an appeal. The remainder of Tucker's testimony, which addressed the steps he took between sentencing and the filing of his § 2255 petition, was difficult to follow and at times contradictory. Tucker testified that after his sentencing hearing he spoke to his lawyer for ten minutes about his decision to appeal; a few breaths later, he testified that the conversation lasted only five seconds. At one point in the evidentiary hearing, Tucker testified that he began working with his cellmate on his habeas petition between four and seven months after being sentenced, during the time he allegedly believed his direct appeal was pending. Later, he testified that he began work on the petition in earnest shortly after learning that his lawyer had not filed an appeal; however, he was unable to recall when he discovered that his appeal had not been filed. Tucker admitted that he made no effort to contact his lawyer to discuss the status of any appeal, although he did try to obtain unspecified paperwork from the lawyer. Tucker admitted that he made no effort to contact the court to check on the status of appeal until October 2004 at the earliest.[3]

---

[3]Although Tucker provided the court with a copy of a legal call request form dated October 12, 2004, the form contained no notations indicating whether the call was ever made.

The transcript reveals that Tucker was unfamiliar with legal terminology and may have had difficulty understanding some of the questions posed to him at the evidentiary hearing. Nevertheless, it was not clearly wrong for the magistrate judge to conclude that Tucker could not provide a coherent timeline of events because he had not acted as diligently as he claimed. The magistrate's credibility determination was bolstered by the fact that although Tucker testified that he wrote to the court immediately after learning that there was no appeal pending, he did not produce copies of the letters he had allegedly written, and none were found in the district court file.[4]

The basis for Tucker's ineffective assistance claim was the fact that his lawyer did not file a timely appeal when allegedly asked to do so. The magistrate judge emphasized that Tucker could have discovered this fact at any time following the expiration of his appeal deadline in May 2003, by contacting the

---

[4] As a peripheral matter, Tucker takes issue with a sentence in the magistrate judge's second revised report and recommendation which read, "A member of the clerk's office at the Court of Appeals advised that when mail is received and no appeal is pending, it is usually returned to the inmate and sometimes forwarded to the district court . . . . That did not happen in this case." The magistrate judge noted that there were no forwarded letters in Tucker's district court file, and that no docket entries indicated that Tucker had inquired about the status of any appeal.

Tucker suggests that the magistrate judge's reliance on the appellate clerk's out of court statement violated his rights by preventing him from cross-examining the clerk about the procedures for returning mail to prisoners. In the third revised report and recommendation, however, the magistrate judge clarified that even if he had not consulted the clerk, his credibility determination would have remained the same because of the contradictions and vagaries of Tucker's testimony. Any reliance on the clerk's statements was, at worst, a harmless error.

court or his lawyer. Tucker contends that the question should not have been when it became possible for Tucker to discover the information, but when a reasonably diligent person would have sought the information and found it. Tucker argues that because the judge failed to specify a date by which a reasonably diligent person would have discovered that no appeal was pending in the case, the court's finding on diligence was flawed.

What Tucker overlooks is that "the due diligence inquiry is an individualized one," *Aron*, 291 F.3d at 712. The magistrate was not required to speculate about when a prototypical Diligent Person would have inquired about the status of a prototypical appeal, but rather when a reasonably diligent person *in petitioner's situation* would have taken action that led to the discovery that no appeal had been filed.

As the magistrate judge pointed out repeatedly, Tucker's testimony regarding his alleged diligence was vague and unconvincing. Tucker and his girlfriend testified that they made repeated attempts to contact Tucker's trial lawyer, but they asked for paperwork, not about the status of any pending appeal. Although Tucker did send his lawyer one letter asking what had happened to "the appeal briefs," he did not do so until February 7, 2005, a delay the magistrate found to be inconsistent with diligent action. Moreover, at the evidentiary hearing, Tucker

8

could not remember when he learned that there was no appeal, when he began working on the habeas petition, or how long he waited to take action after learning that there was no pending appeal. In the face of these individualized facts, it was reasonable for the magistrate to conclude that a reasonably diligent person in Tucker's position would have discovered that there was no pending appeal more than one year before Tucker's habeas petition was filed.

The district court did not clearly err in its finding that Tucker did not exercise reasonable diligence, which means that Tucker's petition is barred as untimely. Consequently, we are unable to consider the underlying merits of Tucker's claim that his lawyer was ineffective.

**AFFIRMED.**